# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | |
|---|---|
| CELESTE CHRISTINE CHAPMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    No. 1:20-CV-125 PLC |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff Celeste Christine Chapman seeks review of the decision of Defendant Social Security Acting Commissioner Kilolo Kijakazi denying her application for Disability Insurance Benefits (DIB) under the Social Security Act. For the reasons set forth below, the Court affirms the Commissioner's decision.

## I.    Background and Procedural History

On May 2, 2017, Plaintiff, who was born in September 1974, filed an application for DIB, alleging she was disabled as of February 16, 2017, as a result of borderline personality disorder, depression, chronic back pain, anxiety, congestive heart failure, and post-traumatic stress disorder (PTSD). (Tr. 133-34)  The Social Security Administration (SSA) denied Plaintiff's claim, and she filed a timely request for a  hearing before an administrative law judge (ALJ).  (Tr. 133-150, 152, 157)  The SSA granted Plaintiff's request for review and conducted a hearing on May 14, 2019. (Tr. 177) On June 24, 2019, the ALJ issued a decision finding Plaintiff not disabled. (Tr.  72)

---

[1] Kilolo Kijakazi became the Acting Commission of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 205(g) of the Social Security Act, 42 U.S.C. §405(g).

Plaintiff filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review. (Tr. 1-3, 216)  Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision.  Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

With regard to the vocational expert's testimony and Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses.  [ECF Nos. 14-1, 23-1, 23-2 & 24] The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II.     Standards for Determining Disability Under the Social Security Act

Eligibility for disability benefits under the Social Security Act ("Act") requires a claimant to demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); see also 20 C.F.R. § 404.1505(a). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...."  42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the ALJ engages in a five-step evaluation process.  See 20 C.F.R. § 404.1520(a).  Those steps require a claimant to first show that he or she is not engaged in substantial gainful activity.  Id.  Second, the claimant must establish that he or she has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(a), (c).  "The sequential evaluation process may be terminated at step two only when

the claimant's impairment or combination of impairments would have no more than a minimal impact on [the claimant's] ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001)). At step three, the ALJ considers whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R., Pt. 404, Subpart P, Appendix 1.   20 C.F.R. § 404.1520(a), (d). If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d)

Prior to step four, the Commissioner must assess the claimant's residual functional capacity (RFC), which is "the most a claimant can do despite [his or her] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); 20 C.F.R. § 404.1520(a), (e). RFC is "based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations." Id. (quoting Lacroix v. Barnhart, 465 F.3d 881, 887 (8th Cir. 2006)).

At step four, the ALJ determines whether the claimant can return to his or her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work.  20 C.F.R. § 404.1520(a), (f); see McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, the claimant will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step.  McCoy, 648 F.3d at 611.

Through step four, the burden remains with the claimant to prove that he or she is disabled. Moore, 572 F.3d at 523. At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. 20 C.F.R §§ 404.1520(a), (g);

404.1560 (c); Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012). If the claimant cannot make an adjustment to other work, then he or she will be found to be disabled.  20 C.F.R. § 404.1520(g).

### III.    ALJ's Decision

Applying the five-step evaluation process, the ALJ found Plaintiff: (1) had not engaged in substantial gainful activity since February 16, 2017, the alleged onset date; and (2) had the severe impairments of congestive heart failure, asthma, obesity, myofascial pain syndrome, depression, anxiety, and borderline personality disorder. (Tr. 77-78) The ALJ concluded that "[a]ll impairments other than those enumerated above, alleged and found in the record, are non-severe or not medically determinable…." (Tr.  78) The ALJ's decision makes no mention of Plaintiff's PTSD diagnosis.

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 78-81) The ALJ found Plaintiff's mental impairments "considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06" because (1) Plaintiff demonstrated only moderate limitations in the broad functional areas under paragraph B of the Listings, including (a) understanding, remembering, or applying information, (b) interacting with others, (c) concentrating, persisting, or maintaining pace, and (d) adapting or managing oneself, and (2) Plaintiff presented "'little evidence' of marginal adjustment such that she has the minimal capacity to adapt to changes in her environment or to demands that are already part of her daily life" as described in paragraph C of the Listings. (Tr.  80-81)

The ALJ determined Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) except she should never climb ladders, ropes, or scaffolds and should no more than occasionally climb ramps and stairs. She is unable to perform work that requires the use of balance, but she can occasionally stoop, kneel, crouch, and crawl. The claimant should avoid

> concentrated exposure to temperature extremes (both hot and cold), wetness, humidity, vibration, and pulmonary irritants such as dust, fumes, and gases. She should avoid exposure to hazards such as unprotected heights and moving and dangerous machinery. The claimant is limited to work involving simple, routine tasks and simple, work-related decisions. She should not interact with the public. The job should require no more than occasional changes in routine. The claimant cannot perform fast-paced work, such as assembly line work.

(Tr. 81) Based on the vocational expert's testimony, the ALJ concluded Plaintiff was unable to perform any past relevant work. (Tr.  87)  However, based on the RFC, Plaintiff's age, education, and prior work experience, and the vocational expert's testimony, the ALJ found Plaintiff was able to perform other jobs that existed in significant numbers in the national economy, such as mail sorter, collator operator, and marker. (Tr. 88)  The ALJ therefore concluded Plaintiff was not disabled. (Tr. 88)

## IV.   Discussion

Plaintiff asserts the ALJ's decision is not supported by substantial evidence because he failed to address Plaintiff's PTSD and its resulting functional limitations in the determination. [ECF No. 14.] Specifically, Plaintiff argues the ALJ erred by failing to find her PTSD was a severe impairment and that the impairment resulted in additional functional limitations. Plaintiff also maintains the ALJ "erred in finding that [Plaintiff's] PTSD did not meet the listing requirements of 12.15."

In response, the Commissioner asserts the ALJ did not erred in declining to include PTSD among Plaintiff's severe impairments and, as a result, the ALJ was not required to perform an assessment of Listing 12.15. [ECF No. 23]. The Commissioner also maintains that even if the ALJ did err in failing to find Plaintiff's PTSD was a severe impairment, such error was harmless because Plaintiff did not demonstrate that she met the Listing requirements to prove disability and

the mental limitations in the RFC sufficiently account for the limitations caused by all of Plaintiff's mental impairments.

A.  Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Chesser v. Berryhill, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)). A court must consider "both evidence that supports and evidence that detracts from the ALJ's determination, [but it] may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome." Id. (quoting Prosch, 201 F.3d at 1012) (internal quotation marks omitted).

A court does not "reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)). Therefore, a court must affirm the ALJ's decision if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]" Wright v. Colvin, 789 F.3d 847, 852 (8th Cir. 2015) (quoting Perkins v. Astrue, 648 F.3d 892, 897 (8th Cir. 2011)).

B.  The ALJ's Assessment of Plaintiff's Mental Impairments

Plaintiff argues the ALJ's decision is not supported by substantial evidence because he failed to find Plaintiff's PTSD was a severe impairment and to include additional functional limitations in consideration of the impairment.  [ECF No. 14.] The Commissioner contends any alleged error by the ALJ in assessing Plaintiff's severe impairments was harmless because the

mental limitations in the RFC sufficiently account for the limitations caused by all of Plaintiff's mental impairments, including her PTSD.

After an ALJ has determined that a claimant is not engaged in substantial gainful activity, the ALJ then determines whether the claimant has a severe impairment or combination of impairments that has or is expected to last twelve months or will result in death. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(i)-(ii). To be considered severe, an impairment must significantly limit a claimant's ability to do basic work activities. See 20 C.F.R § 404.1520(c). "Where an ALJ errs by failing to find an impairment to be severe, such error is harmless if the ALJ finds the claimant to suffer from another severe impairment, continues in the evaluation process, and considers the effects of the impairment at the other steps of the process." DeGroot v. Berryhill, 1:17-CV-202 ACL, 2019 WL 1316964 at *7 (E.D. Mo. March 22, 2019); see also Weed v. Saul, 4:18-CV-1192 SPM, 2019 WL 4451259 at *4 (E.D. Mo. Sept. 17, 2019); Coleman v. Astrue, 4:11-CV-2131 CDP, 2013 WL 665084 at *10 (E.D. Mo. Feb. 25, 2013); Vancil v. Saul, 4:18-CV-55 NAB, 2019 WL 4750443, at *3 (E.D. Mo. Sept. 20, 2019).

In this case, the ALJ found Plaintiff had the severe mental impairments of depression, anxiety, and borderline personality disorder.[2] (Tr.  77-78) The medical evidence demonstrates Plaintiff was also diagnosed with and treated for PTSD, and that the disability adjudicator at the initial review stage concluded that the condition was a severe impairment. (Tr.  137) The ALJ, however, never made an explicit finding of whether Plaintiff's PTSD was severe, non-severe, or not medically determinable.[3] Despite the ALJ's failure to make an explicit finding regarding the

---

[2] The ALJ found Plaintiff had the severe physical impairments of congestive heart failure, asthma, obesity, and myofascial pain syndrome. The ALJ's findings as to Plaintiff's physical impairments have not been raised on appeal.

[3] After setting forth his findings as to Plaintiff's severe impairments, the ALJ stated that "[a]ll impairments other than those enumerated above, alleged and found in the record, are non-severe or not medically determinable as they have been responsive to treatment, cause no more than minimal vocationally

status of Plaintiff's PTSD, the alleged error was harmless. As discussed in greater detail below, the ALJ's decision as a whole demonstrates that the ALJ considered the evidence of Plaintiff's PTSD diagnosis and treatment, treated the impairment as non-severe, and considered it in determining Plaintiff's mental RFC.

Plaintiff maintains the ALJ erred by failing to include additional functional limitations in the mental RFC as a result of Plaintiff's PTSD. RFC is the most a claimant can do in a work setting despite the claimant's physical or mental limitations. Martise v. Astrue, 641 F.3d 909, 923 (8th Cir. 2011) (citation omitted); 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [his or her] limitations." Kraus v. Saul, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting Papesh v. Colvin, 786 F.3d 1126, 1131 (8th Cir. 2015)); 20 C.F.R. § 404.1545(a)(1).

The ALJ's mental RFC limited Plaintiff to performing simple, routine tasks, and to simple, work-related decisions. (Tr. 81). It also limited Plaintiff to no interactions with the public, no more

_____

relevant limitations, have not lasted or are not expected to last at a 'severe' level for a continuous period of 12 months, are not expected to result in death, and have not been properly diagnosed by an acceptable medical source." (Tr. 78)

    In determining a claimant's RFC, the ALJ is required to consider the limitations arising from both severe and non-severe impairments. Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008); see also 20 CFR 404.1545(a)(2) (If the claimant has more than one impairment, the Commissioner "will consider all of your medically determinable impairments…, including your medically determinable impairments that are not "severe,"… when we assess your residual functional capacity."). A claimed condition which is not "medically determinable" need not be considered when determining a claimant's RFC. 20 CFR 404.1545(a)(2). Thus, an ALJ's determination of whether an impairment is severe, non-severe, or not medically determinable has implications for the administrative decision-making process. The ALJ's statement grouping all non-severe and non-medically determinable impairments together is inappropriate and, in some cases, could support a finding of reversible error. In this case, the error is harmless because other portions of the ALJ's decision suggest the ALJ considered Plaintiff's PTSD diagnosis, treatment, and limitations in rendering his RFC determination which, in turn, supports a finding that the ALJ considered Plaintiff's PTSD impairment to be non-severe as opposed to non-medically determinable. While the ALJ's omission did not rise to the level of reversible error in this case, the better practice is for the ALJ to explicitly state which impairments are found to be non-severe and which are found to be not medically determinable.

than occasional decision-making and changes in routine, and no fast-paced work. (Tr.  81)  In support of this determination, the ALJ found (1) Plaintiff had only moderate limitations in the broad functional areas, (2) Plaintiff's mental status examination findings after August 2018 were often unremarkable, (3) Plaintiff previously worked while undergoing treatment for some of her mental health conditions, and (4) the medical evidence supports a finding that treatment improved her symptoms. (Tr.  84-86).

The record demonstrates Plaintiff suffered from depression and anxiety for more than two decades and that she initially sought treatment from her primary care physician, who prescribed medication. (Tr.  110-111, 532-33, 565). In May 2016, Plaintiff attempted suicide, citing conflict with her ex-partner over custody, living with and caring for her home-bound parents, conflict between her mother and wife, and concerns with her work performance as sources of stress.  (Tr. 392, 395, 401, 403). Plaintiff received outpatient treatment at St. Anthony's Medical Center for her depression and anxiety through June 2016, including psychiatric care, medication adjustments, and group therapy. (Tr.  392-510). During this time, Plaintiff's doctor consistently observed that while Plaintiff's mood was anxious or depressed, Plaintiff was attentive, her affect and judgment were appropriate, her cognition and memory were unimpaired, and her memory was normal. (Tr. 408, 417, 424, 437, 463, 474). Near the end of her treatment at St. Anthony's, Plaintiff reported still feeling "a lot" of anxiety but that her depression was "a lot better" and  "manageable[.]" (Tr. 503, 510).

After her treatment at St. Anthony's, Plaintiff's primary care physician continued to adjust Plaintiff's medications and recommended Plaintiff seek additional treatment from a psychiatrist and to participate in therapy. (Tr.  558, 565). Plaintiff did not seek additional treatment until she was admitted to Pemiscot Memorial Hospital for psychiatric care between May 29, 2017, and June

1, 2017, after expressing suicidal ideations. (Tr.  721-738, 739-740) After she was discharged, Plaintiff followed up at Bootheel Counseling Services (Bootheel Counseling) for outpatient treatment. (Tr.  723).

Between June 2017 and April 2019, Plaintiff received treatment for her mental health conditions at Bootheel Counseling. (Tr.  777- 791, 839-842, 847-938, 956-1200, 1709-1718) During that time, Plaintiff's psychiatrist diagnosed her with major depressive disorder, generalized anxiety disorder, PTSD, and borderline personality disorder. (Tr.  778, 782, 784, 855, 1715) The bulk of the medical evidence detailing Plaintiff's mental health diagnoses and treatment are found in the progress notes and office treatment records from Bootheel Counseling. (Tr.  777-791, 839-842, 847-938, 956-1200, 1703-1708, 1709-1718) These records frequently discuss issues specific to Plaintiff's individual diagnoses, including the physical, emotional, and sexual abuse Plaintiff endured in childhood and as an adult and her PTSD resulting from that abuse.

With regard to Plaintiff's mental functioning and limitations, however, the records largely do not differentiate between diagnoses but instead provide a global assessment of Plaintiff's functioning in light of all of her mental health conditions. Overall, the medical records demonstrate Plaintiff's mental health was "improving but [with] staggered improvement." (Tr.  1018). Beginning in 2018, Plaintiff reported she was doing well on her medications, stating that her mood and anxiety improved while taking them. (Tr.  916, 1078, 1175) In March 2019, Plaintiff reported that her depression and anxiety "have been ok[,]" and in April 2019 reported that her anxiety was under control and manageable. (Tr.  1709-1714). In 2018 and 2019, Plaintiff's psychiatrists frequently observed that Plaintiff's affect was appropriate and congruent, her cognition and attention were fair, her behavior and affect were appropriate, her thought content and memory were normal, and her judgment and insight were fair or good. (Tr.  910-938, 956-1200, 1703-1718)

Plaintiff was properly oriented and usually attentive and engaged in therapy. (Tr. 910-938, 956-1200, 1703-1718) Furthermore, when Plaintiff presented for care unrelated to her mental health impairments, she generally displayed a normal or appropriate mood, affect, insight, judgment, and reasoning.  (Tr.  519, 536, 553, 564, 577, 585, 598, 614,  636, 669, 675, 684, 694, 703,  707, 717, 772, 1215, 1244).

These assessments were consistent with that of James Morgan, Ph.D., the State agency non-examining psychological consultant, and Plaintiff's own testimony. In his January 2018 assessment, Dr. Morgan concluded Plaintiff had only moderate limitations in her ability to (1) understand, remember, or apply information, (2) interact with others, and (3) concentrate, persist, or maintain pace. (Tr.  144-145) At the hearing, Plaintiff testified she has had depression and anxiety since her early 20's and but that she developed borderline personality disorder due to stress and an "event" in February 2017 which rendered her "mentally incapacitated." (Tr.  110-111) Plaintiff testified she was unable to work because her borderline personality disorder caused "issues with people in a sense of being in control over [her] life" which "leads to anxiety and panic attacks which affects her performance."  (Tr.  110-111, 114-115) Plaintiff, however, also stated she had "put[] in a lot of effort" to treat her mental health issues, and that she is "better" than she was in February 2017. (Tr.  113) Specifically, Plaintiff testified that while suicidal ideation continued to be a problem for her, she was currently "less suicidal, having less self-harm ideation" and was more likely to seek help before acting on those feeling than she was in early 2017. (Tr. 114)  Plaintiff testified she continued to work on her coping skills in the hopes of one day returning to employment. (Tr. 115, 125)

Here, the medical evidence and other evidence in the record regarding the diagnosis, treatment, and functional assessment of Plaintiff's mental health impairments took into account all

11

of her conditions, including her PTSD. As such, even though the ALJ did not explicitly state he was considering Plaintiff's PTSD in rendering his decision, the ALJ's extensive citation to and reliance upon evidence in which all of Plaintiff's mental health conditions were inextricably intertwined supports a finding that the ALJ considered all of these conditions in rendering his decision.

Any alleged error by the ALJ in failing to find that Plaintiff's PTSD was a severe impairment was harmless because the ALJ found Plaintiff had several severe mental impairments, continued the evaluation, and considered Plaintiff's PTSD in determining the mental RFC. In determining Plaintiff's mental RFC, which included numerous restrictions accounting for Plaintiff's mental health conditions, the ALJ properly considered Plaintiff's medical records, medical opinion evidence, and Plaintiff's testimony. The Court therefore finds substantial evidence on the record supported the ALJ's RFC determination.

C.   Assessment of Listing 12.15 Trauma- and Stressor-Related Disorders

Plaintiff also argues the ALJ committed reversible error by "finding that [Plaintiff's] PTSD did not meet the listing requirements of 12.15." The Commissioner argues the alleged error was harmless because Plaintiff did not demonstrate that she met the Listing requirements to prove disability.

Listing 12.15 provides a claimant must meet the requirements of subparts A and B, or A and C, of that Listing by showing:

A. Medical documentation of all of the following:
1. Exposure to actual or threatened death, serious injury, or violence;
2. Subsequent involuntary re-experiencing of the traumatic event (for example, intrusive memories, dreams, or flashbacks);
3. Avoidance of external reminders of the event;
4. Disturbance in mood and behavior; and
5. Increases in arousal and reactivity (for example, exaggerated startle response, sleep disturbance).

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas
of mental functioning (see 12.00F):
1. Understand, remember, or apply information (see 12.00E1).
2. Interact with others (see 12.00E2).
3. Concentrate, persist, or maintain pace (see 12.00E3).
4. Adapt or manage oneself (see 12.00E4).

OR

C. Your mental disorder in this listing category is "serious and persistent;"
that is, you have a medically documented history of the existence of the disorder
over a period of at least 2 years, and there is evidence of both:
1. Medical treatment, mental health therapy, psychosocial support(s), or a highly
structured setting(s) that is ongoing and that diminishes the symptoms and signs
of your mental disorder (see 12.00G2b); and
2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in
your environment or to demands that are not already part of your daily life (see
12.00G2c).

20 C.F.R. § 404, Subpart P, Appendix 1, Part 1, § 12.15.

The Commissioner does not contest that Plaintiff met the requirements of paragraph A.

Instead, the Commissioner argues Plaintiff has not demonstrated that she met the requirements in

paragraphs B or C of Listing 12.15. The Commissioner asserts the ALJ functionally concluded

Plaintiff did not meet the requirements of paragraphs B and C in Listing 12.15, as these

requirements are identical to those contained in paragraphs B and C of Listings 12.04 and 12.06,

which the ALJ did evaluate.

The Commissioner is correct that paragraphs B and C of Listings 12.04 and 12.06 are

identical to paragraphs B and C of Listing 12.15.  See 20 C.F.R. § 404, Subpart P, Appendix 1,

Part 1, §§ 12.04, 12.06, 12.15. Furthermore, the ALJ concluded that "[t]he severity of the

claimant's mental impairments, considered singly and in combination, do not meet or medically

13

equal the criteria of listings 12.04 and 12.06" finding Plaintiff failed to meet the requirements in paragraphs B and C of each of those Listings. (Tr.  79-81)

Specifically, Paragraph B of each Listing requires a showing of "extreme limitation of one, or marked limitation of two" of four areas of mental functioning. See 20 C.F.R. § 404, Subpart P, Appendix 1, Part 1, §§ 12.04, 12.06, 12.15. The ALJ considered Plaintiff's mental impairments and found they "singly and in combination" did not meet the paragraph B Listing requirements because Plaintiff demonstrated only moderate limitations in the broad functional areas of  (a) understanding, remembering, or applying information; (b) interacting with others; (c) concentrating, persisting, or maintaining pace; and (d) adapting or managing oneself.  (Tr.  79-80) The ALJ concluded Plaintiff failed to demonstrate that she had extreme or marked limitations in any of the broad functional areas.  (Tr.  79-80).

The ALJ's conclusions regarding Plaintiff's mental functioning are supported by the record. In finding that Plaintiff had only moderate limitations in the functional areas, the ALJ considered the medical records, the assessment of Dr. Morgan, and Plaintiff's testimony and self-reported activities of daily living. (Tr. 79-81) For example, Plaintiff prepared simple meals, crocheted, read, and wrote poetry to relax. (Tr. 291, 293, 441-42, 888) Plaintiff regularly  attended and participated in group therapy. Plaintiff also had a network of supportive friends that she occasionally visited and with whom she reported spending several hours a day interacting online. (Tr. 293, 886-887) While Plaintiff testified that she did not handle stress well, the ALJ noted that Plaintiff's psychiatrists and medical providers frequently observed her mood and affect to be normal and appropriate, and that Plaintiff's anxiety was improving.

Paragraph C of each Listing requires a showing that the claimant's mental disorder is "serious and persistent[,]" meaning he or she has "a medically documented history of the existence

of the disorder over a period of at least 2 years," and evidence of both: (1) "medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder" and (2) "marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life[.]" See 20 C.F.R. § 404, Subpart P, Appendix 1, Part 1, §§ 12.04, 12.06, 12.15. Again, the ALJ considered Plaintiff's mental impairments and found they "singly and in combination" did not meet subsection 2 of the paragraph C Listing requirements because Plaintiff presented "'little evidence' of marginal adjustment such that she has the minimal capacity to adapt to changes in her environment or to demands that are already part of her daily life[.]" (Tr. 79-81) In support of this finding, the ALJ observed that Plaintiff maintained regular attendance at outpatient and group therapy appointment for approximately two years.

In her brief, Plaintiff does not provide any substantive analysis contesting the ALJ's findings on these issues. Instead, Plaintiff presents only conclusory statements that the Listing requirements are met, supported by a string of citations to the record or notations to "See the mental health records[.]" [ECF No. 14]. This Court, however, will not reverse the ALJ's decision simply because it is possible to draw an "inconsistent position" from the evidence. See Wright, 789 F.3d at 852 (the court must affirm the ALJ's decision if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]") The Court finds the ALJ considered the evidence in the record and concluded that Plaintiff failed to prove the necessary Listing requirements. Because the ALJ's determination was supported by "good reasons and substantial evidence," the Court defers to his determination.  See Gonzales, 465 F.3d at 894.

**V.      Conclusion**

For the reasons discussed above, the Court finds that substantial evidence in the record as a whole supports Defendant's decision that Plaintiff is not disabled. Accordingly,

**IT IS HEREBY ORDERED** that the final decision of Defendant denying Social Security benefits to Plaintiff is **AFFIRMED**.

A separate judgment in accordance with this Memorandum and Order is entered this date.

PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 8th day of June, 2022

16